# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DANA LYNN OLDHAM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-17-68-JHP-SPS |
| ) | |
| **COMMISSIONER of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

The claimant Dana Lynn Oldham requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born October 3, 1955, and was fifty-nine years old at the time of the administrative hearing (Tr. 50-51). She completed four or more years of college (Tr. 288). The claimant alleges that she has been unable to work since May 19, 2013, due to bipolar disorder, anxiety, chronic obstructive pulmonary disease, fibromyalgia, migraines, irritable bowel syndrome, hiatal hernia, and asthma (Tr. 287).

### Procedural History

On July 12, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-8. Her applications were denied. ALJ Edward Thompson held an administrative hearing and determined the claimant was not disabled in a written opinion dated October 20, 2015 (Tr. 11-33). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), *i. e.*, she could lift/carry (including upward pulling) fifty pounds occasionally and twenty-five pounds frequently, and stand/walk (with normal breaks) and sit (with normal breaks) for six hours each in an eight-hour workday, and that the ability to

push/pull (including operation of hand and/or foot controls) was unlimited. Additionally, he determined that the claimant must avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. Finally, he found that she could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 29). The ALJ therefore concluded that the claimant was not disabled because there was work she could perform in the economy, *e. g.*, counter supply worker, dining room attendant, and hand packager (Tr. 33).

## Review

The claimant contends that the ALJ improperly evaluated the evidence in the record, particularly the evidence related to her recurrent lethargy and fatigue, hand tremors and/or hand wringing, and her unsteady gait and balance problems. She thus asserts that she could not perform the physical and manipulative demands of medium work.[2] The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of chronic obstructive pulmonary disease/asthma, mild spondylosis of the lumbar spine, osteoporosis, myalgias/fibromyalgia, migraine, gastroenteritis, hyperlipidemia, gastrointestinal reflux disease (GERD), hiatal hernia, pain in joint of right knee, irritable bowel syndrome (IBS), peptic ulcer disease, affective disorder, and an anxiety-related disorder (Tr. 14). The

---

[2] Under Local Civ. R. 7.1(c), "No brief shall be submitted that is longer than twenty-five (25) typewritten pages without leave of Court." Such leave was not requested of the Court in this case, and the Court notes that approximately three pages of the thirty-two page brief contained actual arguments related to the claimant's appeal. The claimant's brief therefore fails to comply with this rule, but the undersigned Magistrate Judge nevertheless elects to address the merits of the claimant's contentions.

specific medical evidence as to her physical impairments reflect, as relevant, that the claimant received treatment for fibromyalgia, and reported in January 2014 that medications were not controlling her pain (Tr. 470). Additionally, an x-ray of the lumbar spine revealed mild lumbar spine spondylosis, and atherosclerotic vascular disease (Tr. 473). During that same time frame, through March 2014, the claimant was exposed to carbon monoxide, resulting in both neurological and mental changes (Tr. 748). Once it was identified and resolved, the claimant improved greatly (Tr. 750). The claimant was also treated for right knee pain, but physical therapy brought about a 40% improvement, although she continued to be unable to ascend/descend stairs in July 2014 (Tr. 776).

     Treatment notes also reflect that the claimant underwent a pulmonary function test on September 3, 2013, which produced a fair effort without reproducible results, in which the technician noted that the results were good and reliable where the effort was not as important, and although hesitant to do so, expressed a belief that the patient did not provide maximum effort (Tr. 346). On October 27, 2014, the claimant reported continued pain as a result of her fibromyalgia, and that allergies had worsened her COPD (Tr. 791).

     As to her mental impairments, the claimant reported feeling depressed and lethargic, and was assessed with bipolar disorder not otherwise specified and anxiety disorder not otherwise specified, along with global assessment of functioning (GAF) scores between 65 and 75 (Tr. 404-435). Her therapist described her as having a negative cognitive ruminative style, wherein she often repeated the same negative scripts, and therefore noted the challenge in finding motivation in light of this lack of motivation and depression (Tr. 426). In November 2013, a notation indicates that she focused on outside factors affecting

how she felt, and that her ability to "assist the medication in regulating her mood" may be affected by her focusing on these external factors rather than on internal factors (Tr. 527). However, at a treatment with her general practitioner, the claimant reportedly denied having a depressed mood, difficulty sleeping, or managing stress on January 17, 2014 (Tr. 472).

In February 2014, the claimant's therapist was concerned about physical and cognitive changes that had taken place with the claimant (Tr. 678).  Ultimately, this was determined to be related to her mistakenly taking double the amount prescribed for one of her medications, as well as carbon monoxide poisoning (Tr. 693, 748).  Within a week, improvements were noted, including that although the claimant was still using a cane, she mostly carried the cane instead of leaning on it (Tr. 694).  However, she reported falling in March 2014, and was considered a fall risk until her balance improved (Tr. 701).  By April 1, 2014, the claimant's therapist described her as "dramatically improved," that she was not carrying the cane that day, and that her mood had stabilized (Tr. 703).  Although some minor shaking was noted, it was described as much less than noted in the previous two months (Tr. 704).  By the end of April, her improvement was so great that she was moved from weekly to bi-weekly sessions (Tr. 711).  On June 27, 2014, the claimant agreed with her therapist that she had reached her therapeutic goals and was discharged from therapy (Tr. 725-727).  The claimant continued, however, to receive mental health medication management, and reported some fatigue due to medications on January 27, 2015 (Tr. 835, 839-840).

On July 1, 2015, the claimant was taken to Red Rock Behavioral Health Services for suicidal ideation, but was discharged with two weeks of medications to herself. She was described as expressive and articulate, and stated that she was "good now" and "ready to go home" (Tr. 877-878).

State reviewing physicians determined that the claimant could perform medium work, but needed to avoid concentrated exposure to fumes, dusts, gases, poor ventilation, etc. (Tr. 110-111, 135-136). As to her mental impairments, she was found moderately impaired in the typical three areas, and the state reviewing physicians concluded that she could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 112-113, 138-139).

The claimant contends that the ALJ erred in his RFC assessment because the evidence would suggest a more restrictive RFC and the ALJ failed to account for limitations related to her lethargy and fatigue, hand tremors/hand wringing, and episodes of unsteady gait/balance problems. The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis. As discussed below, the ALJ noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, and his opinion clearly indicates that he adequately considered the evidence in reaching his conclusions regarding the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of

an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

In his written opinion, the ALJ summarized the claimant's testimony and much of the medical evidence, reciting at length and verbatim the mental status examination findings spanning from May 29, 2013 through June 16, 2015 (Tr. 16-24). Additionally, he noted that the claimant was treated at Red Rock Behavioral Health Services, but that there were no mental status examination findings to recite from that encounter (Tr. 25). As to her physical impairments, the ALJ summarized the treatment records including her reports of fatigue and her use of a cane, as well as the objective tests administered including x-rays of the chest and lumbar spine (Tr. 14). He noted the claimant's reported knee pain, but that she otherwise had no joint dysfunction and that she was doing well on her medications in January 2015 (Tr. 15). Additionally, he pointed out the claimant's progression from using a cane to her dramatic improvement of not needing it (Tr. 14-15). He then found that the state reviewing physician opinions were supported by the record, acknowledging her history of knee surgeries but contrasting them with the lack of objective findings as to her knees (Tr. 15). Furthermore, he found that the claimant's fibromyalgia was not severe enough to preclude medium work, because the record indicated her pain was controlled with medication and she denied myalgias in March 2015 (Tr. 15). He concluded that the claimant's COPD was her most significant physical impairment, but that a limitation to avoiding concentrated exposure to dusts, fumes, etc., would nevertheless allow her to perform medium work (Tr. 15).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). It is true that the ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). But here, the ALJ's treatment of the medical evidence in this case meets these standards. The undersigned Magistrate Judge finds that the ALJ specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record, *and still concluded* that she could perform medium work. *See Hill v. Astrue*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The undersigned Magistrate Judge thus finds no error in the ALJ's failure to include any additional limitations in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted

9

the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the undersigned Magistrate Judge simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 24th day of August, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**